# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEON K. PERKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-162-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

Leon Perkins. *Pro se* petitioner.

Paul R. Wallace, Chief of Appeals, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

## MEMORANDUM OPINION

_____ May 14 _____, 2012
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Leon K. Perkins ("Perkins"). (D.I. 1) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 15, 2002, Wilmington police officers responded to a complaint that shots had been fired in or about Perkins' apartment. After arriving there, the officers discovered the dead body of a female victim lying at the bottom of the fire escape. Police identified the victim as Aunyea Hawkins ("Hawkins"), the mother of Perkins' daughter. Hawkins was found topless, wearing only a pair of medical scrubs. Nearby residents reported that they heard arguing, screaming, a "lot of heavy movement, footsteps . . . enough to make . . . the ceiling vibrate," and the sound of a single gunshot. Hawkins suffered a gunshot wound that traveled in a downward trajectory, entering the back of her head and exiting through the left side of her face.

Officers recovered a print of Perkins' thumb from a box of .38-caliber ammunition on the floor of his apartment. Perkins was later arrested and charged with Hawkins' murder. According to Perkins, the gun was thrown off a bridge into the Delaware River and never recovered.

At trial, Perkins testified as follows: Hawkins had come to Perkins' apartment to pick up their daughter. There they engaged in sexual intercourse, after which Hawkins became sick and vomited on the living room floor. After Hawkins and Perkins took a shower together, Perkins

---

[1]The factual background is recited from the Delaware Supreme Court decision on Perkin's direct appeal, *Perkins v. State*, 920 A.2d 391 (Del. 2007).

1

started getting dressed to meet another woman. Hawkins scrolled through the caller ID log on Perkins' telephone. She became enraged when she saw the telephone numbers of several women, and began screaming at Perkins. When Perkins entered from another room, Hawkins was pointing a gun at him. They struggled for control of the gun. Perkins eventually grabbed the gun from Hawkins, who began running down the fire escape. Perkins stopped to turn back toward the apartment, and his hands went out to grab the railing, which caused the gun accidentally fire into the back of Hawkins' head. Panicked, Perkins then fled the apartment and later threw the gun into the Delaware River. *Perkins*, 920 A.2d at 393-94.

A Superior Court jury convicted Perkins of first degree murder, possession of a firearm during the commission of a felony ("PFDCF"), and two counts of possession of a deadly weapon or ammunition by a person prohibited ("PDWPP"). On February 10, 2006, the Superior Court sentenced Perkins to life imprisonment for the first degree murder conviction, and to a term of years on the remaining charges. Perkins appealed, and the Delaware Supreme Court affirmed his convictions and sentences. *Id.*

In May 2007, Perkins filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See State v. Perkins*, 2008 WL 2406231 (Del Super. Ct. June 11, 2008); *Perkins v. State*, 962 A.2d 917 (Table), 2008 WL 5191831 (Del. Dec. 11, 2008).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

2

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>  (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

3

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

## C. Standard of Review

When a state court has adjudicated a petitioner's habeas claim on the merits, a federal district court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."

4

*Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

And finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both implicit and explicit findings of fact, and can only be rebutted by the petitioner upon a showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341(2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

**III. DISCUSSION**

Perkins' petition asserts the following six grounds for relief: (1) defense counsel provided ineffective assistance by failing to request missing evidence instructions under *Deberry v. State*, 457 A.2d 144 (Del. 1983) for evidence the State failed to preserve; (2) the State violated Perkins' due process rights by destroying and suppressing exculpatory evidence; (3) trial counsel erred by failing to object to prosecutorial misconduct during the closing argument; (4) trial counsel provided ineffective assistance by failing to move to sever the two charges of possession of a deadly weapon by a person prohibited; (5) trial counsel provided ineffective assistance by failing to request lesser-included offense instructions for second degree murder, manslaughter, and criminally negligent homicide; and (6) trial counsel provided ineffective assistance by failing to request a specific unanimity instruction. The State contends that the petition should be denied in its entirety because the claims are procedurally barred. Alternatively, the State contends that the ineffective assistance of counsel claims lack merit.

5

**A. Claims One, Three, Four, Five, and Six: Ineffective Assistance of Counsel**

Perkins presented the instant five ineffective assistance of counsel claims in his Rule 61 motion. The Superior Court judge directed trial counsel to respond to Perkins' ineffective assistance claims, and counsel did so in a twenty-three page affidavit. After considering the affidavit, the Superior Court denied the claims as meritless.

On post-conviction appeal, Perkins explicitly argued that the Superior Court abused its discretion in denying his ineffective assistance of counsel claims without holding an evidentiary hearing, while specifically describing the ineffective assistance of counsel claims. The Delaware Supreme Court denied Perkins' evidentiary hearing claim because it was unable to conclude that the judge abused her discretion in determining that an evidentiary hearing was not necessary. *See Perkins*, 2008 WL 5372770, at *1. The Delaware Supreme Court also explicitly held that the ineffective assistance of counsel claims were "without merit for the reasons stated in the Superior Court's well-reasoned decision of June 11, 2008." *Id.* at *2. Given the Delaware Supreme Court's adjudication of these claims, the court must review Perkins' ineffective assistance of counsel claims under § 2254(d).[2]

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional

---

[2]Due to this conclusion, the court will not address the State's contention that Perkins procedurally defaulted his ineffective assistance of counsel claims.

norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the

second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but

for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability

is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make

concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See*

*Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-

92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding

and leads to a "strong presumption that the representation was professionally reasonable."

*Strickland*, 466 U.S. at 689.

Notably, a state court's decision regarding an ineffective assistance of counsel claim is

owed "double deference" when reviewed under § 2254(d)(1), because

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and
> when the two apply in tandem, review is doubly so. The *Strickland* standard is a general
> one, so the range of reasonable applications is substantial. Federal habeas courts must
> guard against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not**
> **whether counsel's actions were reasonable. The question is whether there is any**
> **reasonable argument that counsel satisfied *Strickland*'s deferential standard."**

*Richter*, 131 S.Ct. at 788 (emphasis added)(internal citations omitted). When assessing the

reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that

counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than

sheer neglect," and "*Strickland* [] calls for an inquiry into the objective reasonableness of

counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S.Ct. at 790

(internal citation omitted). In turn, "[w]hen assessing prejudice under *Strickland*, the question is

"whether it is reasonably likely the result would have been different" but for counsel's

performance, and the "likelihood of a different result must be substantial, not just conceivable."

*Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit

through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists

could disagree on the correctness of the state court's decision." *Id.* at 786. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded disagreement.

*Id.*

Turning to the § 2254(d) inquiry in this case, the court notes that the Delaware Supreme

Court analyzed Perkins ineffectiveness assistance of counsel claims within the *Strickland*

framework. Therefore, the Delaware Supreme Court's decision is not contrary to clearly

established law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision

applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does]

not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Additionally, for the following reasons, the court concludes that the Delaware Supreme

Court reasonably applied *Strickland* in denying Perkins' ineffective assistance of counsel

allegations.

### 1. Failure to request missing evidence instructions

Pursuant to well-settled Delaware precedent, the State has a duty to gather and preserve

evidence that may be material to a defendant's guilt or innocence.[3] *See Lolly v. State*, 611 A.2d

---

[3] In contrast, although the United States Supreme Court has held that due process requires
the **preservation** of potentially exculpatory evidence, *Arizona v. Youngblood*, 488 U.S. 51

956, 960 (Del. 1992). When faced with the State's failure to do so, a trial court may be required

to give a missing evidence instruction, commonly referred to as a *Deberry* instruction, telling the

jury to infer that the evidence would have been exculpatory if it had been gathered and/or

preserved.[4] *See Deberry*, 457 A.2d at 751-52.

In this case, Perkins contends that trial counsel erred by failing to request a *Deberry*

instruction with respect to the following evidence the State failed to gather and preserve: the

bullet allegedly shot by Hawkins and lodged in the ceiling of Perkins apartment; the gun; a

comparison between Hawkins' fingerprints and the latent found on the ammunition box; a

comparison between Hawkins' fingerprints and those found at the crime scene; gunshot residue

---

(1988), there is no Supreme Court precedent requiring law enforcement personnel to **gather**
potentially exculpatory evidence on the accused's behalf.

[4]In *Deberry*, the Delaware Supreme Court established a bifurcated analysis for
determining the appropriate response to the State's failure to preserve and/or collect the missing
evidence in a particular case. The first part of the *Deberry* analysis involves asking the following
three questions:
> (1) if the requested material was in the possession of the State at the time of the defense
> request, would it have been subject to disclosure under Criminal Rule 16 or *Brady v.
> Maryland*;
> (2) if so, did the State have a duty to preserve the material; and
> (3) if there was a duty to preserve the material, was the duty breached, and what
> consequences should flow from a breach.

If it is determined that the State breached its duty to collect and preserve evidence, then
the court should proceed to the second part of the analysis to determine the proper remedy. This
portion requires considering:
> (1) the degree of negligence or bad faith involved;
> (2) the importance of the missing evidence considering the probative value and reliability
> of secondary or substitute evidence that remains available; and
> (3) the sufficiency of the other evidence produced at trial to sustain the conviction.
*Deberry*, 457 A.2d at 750-752. The court must "draw a balance between the nature of the
State's conduct and the degree of prejudice to the accused" to determine if the appropriate
sanction is a *Deberry* instruction. *Id*. at 752.

testing of Perkins' clothing; and gunpowder residue testing of Hawkins' hands and fingernails.

### a. Bullet

The two theories presented by the defense during the trial were that Perkins acted in self-defense and that he accidentally shot and killed Hawkins. Perkins testified that the gun belonged to Hawkins and that she fired the gun at him in anger, but missed him and hit the ceiling instead. Perkins also testified that he struggled with Hawkins while trying to get the gun away from her, and that he accidentally shot her after the struggle. In an attempt to substantiate the theory that Hawkins fired first, defense counsel introduced photos of the ceiling showing a bullet hole (taken by Perkins' brother Kevin), the results of gunshot residue testing on Hawkins' hands and fingernails, and the fact that two bullets were missing from the ammunition box. The bullet Hawkins allegedly shot was never recovered from the ceiling.

In his Rule 61 proceeding, Perkins alleged that his defense attorneys were ineffective for failing to request a missing evidence instruction for the bullet, because the bullet would have bolstered his claim of self-defense. Defense counsel filed a Rule 61 affidavit in response, explaining why they decided not to request the instruction. Counsel described how they initially sent a defense investigator to search the apartment to retrieve the bullet, but reconsidered that course of action when the apartment management refused to let the investigator into the apartment. (D.I. 15, App. to Appellant's Op. Br. in *Perkins v. State*, No.325,2008, Exh. B) Counsel explained that obtaining a court order for permission to enter the apartment would have put the State on notice of a critical element of their proposed defense theory, because the State would have requested to be present during any search of the apartment. This scenario created the following "Catch-22 []: if a bullet were found, [Perkins'] defense would be bolstered, [but] if a

bullet were not found, the State would use this fact to seriously undermine the entire defense at trial." *Perkins*, 2008 WL 24606231, at *3. Therefore, for tactical reasons, counsel decided not to seek a court order to enter the premises.

After reviewing the record, the Superior Court held that defense counsel did not render ineffective assistance by not requesting a missing evidence instruction for the bullet for two reasons. First, a *Deberry* instruction was not warranted in Perkins' circumstances, because the State did not have a duty to "gather" the bullet; the bullet was not discoverable under Rule 16 or *Brady* because it was never in the State's possession and counsel did not request the State to locate and gather the bullet. Second, given the detrimental effect **not** finding a bullet in the ceiling would have had on the defense theory, counsel reasonably and strategically decided to rely on more dependable evidence of the bullet's existence and forego a court order for permission to enter the apartment. The Delaware Supreme Court affirmed this decision, explicitly holding that counsels' actions did not satisfy either prong of *Strickland*.

In this proceeding, the court begins by noting it is bound by the Delaware state courts' holding that Perkins was not entitled to a missing evidence instruction under Delaware law. *See Bradshaw v. Richter*, 546 U.S. 74, 76 (2005). Therefore, the court concludes that counsel did not perform deficiently by failing to request an instruction that was not available in his case, and Perkins was not prejudiced by counsels' failure to request an unavailable instruction. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Additionally, counsels' decision to rely on the other evidence indicating the existence of the bullet in the ceiling, rather than seek a court order for permission to enter the apartment to recover the bullet themselves, did not amount to ineffective assistance of counsel. Although

Perkins contends that Kevin's photos of the ceiling clearly demonstrated the existence of a bullet hole, the record belies that contention. For instance, as noted by the Superior Court, "[t]he record of the preliminary hearing reflects that the State examined the walls and ceiling in Perkins' apartment and no damage was found to indicate that a gunshot had been fired in the apartment." *Perkins*, 2008 WL 2406231, at *3 n.20. In turn, "the testimony of several neighbors stating that they heard only one gunshot corroborate[d] the State's finding." *Id.* And, significantly, although Kevin testified that he did not shoot a bullet into the ceiling, he conceded that he had the opportunity to do so. Thus, when viewed in context with this record, the Delaware Supreme Court's holding that counsel reasonably decided to rely on the other more dependable evidence regarding the bullet's existence cannot be said to be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Accordingly, the court will deny the instant allegation for failing to satisfy the doubly deferential standard by which ineffective assistance of counsel claims are measured.

### b. Missing Gun

Perkins also alleges that counsel rendered ineffective assistance by not requesting a missing evidence instruction regarding the State's inability to produce the gun. According to Perkins, the serial numbers on the gun would have demonstrated that the gun was registered to a friend of Hawkins, thereby substantiating his claim that Hawkins brought the gun to his apartment and that he acted in self-defense.

The Superior Court denied this argument, holding that counsel reasonably decided not to request a missing evidence instruction because Perkins intentionally disposed of the gun and he

never informed counsel about the serial numbers. The Delaware Supreme Court affirmed the Superior Court's judgment.

This decision constituted a reasonable application of *Strickland*. Pursuant to Delaware law, a *Deberry* instruction is not appropriate if the State did not play a role in the destruction of potentially exculpatory evidence. *See State v. Burns*, 2007 WL 2677064, at *7 (Del. Super. Ct. Sept. 11, 2007). In this case, Perkins destroyed the evidence by throwing the gun over the bridge, and the police were not even aware of the gun's existence at that time. *See, e.g., McCrey v. State*, 941 A.2d 1019 (Table), 2008 WL 187947, at *2 (Del. Jan. 3, 2008); *Burns*, 2007 WL 2677064, at *7. Therefore, defense counsel did not render ineffective assistance by failing to request an unavailable instruction.

c. Hawkins' Fingerprints at Crime Scene and on Ammunition Box

Perkins contends that counsel erred by not requesting a missing evidence instruction with respect to the State's failure to compare Hawkins' fingerprints to unidentified fingerprints found at the crime scene. However, considering that Hawkins' presence in Perkins' apartment was never in dispute, comparing Hawkins' fingerprints against those found at the crime scene would have been irrelevant. Therefore, counsels' failure to request a *Deberry* instruction for this evidence did not amount to ineffective assistance.

Perkins also contends that defense counsel should have requested a *Deberry* instruction regarding the State's failure to compare the print of Perkins' thumb that was recovered from the box of ammunition to unknown prints lifted from the ammunition box, because such a comparison would have demonstrated that the unknown prints belonged to Hawkins. The Superior Court rejected this argument after determining that Perkins could not establish how

13

finding Hawkins' fingerprints on the box would have exonerated him of the possession of a deadly weapon or ammunition by a person prohibited charges when the box of ammunition was found on the floor of **his** apartment. The Superior Court also concluded that Perkins failed to demonstrate that he was prejudiced by counsels' performance because, during closing argument, counsel used the State's failure to compare the print of Perkins' thumb that was recovered from the box of ammunition to unknown prints lifted from the ammunition box to demonstrate how poorly and incompletely the police investigated Hawkins' homicide and the possibility of other suspects. The Delaware Supreme Court affirmed this decision.

In their Rule 61 affidavit, counsel explained that a *Deberry* instruction for this evidence was not warranted, because the evidence was not "missing," and the State is not required to perform any specific type of forensic testing to prove its case. Moreover, although defense counsel could have independently ordered a fingerprint analysis of the ammunition box, they deliberately chose not to do so because of the "Catch-22" facing them; if the victim's prints were not found on the box, the State would have used that fact to seriously undermine Perkins' theory of self-defense at trial. (D.I. 15, App. to Appellant's Op. Br. in *Perkins v. State*, No. 325,2008, Exh. B, at 8-9)

In this proceeding, Perkins has failed to provide anything more than mere speculation as to the potential value such fingerprint testing would have had on his case. Thus, when viewed in context with counsels' Catch-22 explanation, and through the doubly deferential lens applicable to ineffective assistance of counsel claims on habeas review, the court concludes that the Delaware Supreme Court's denial of the instant allegations does not warrant habeas relief.

14

### d. Clothing and fingernail clippings

Perkins contends that his defense attorneys were ineffective for not requesting a missing evidence instruction regarding the police department's failure to collect Hawkins' fingernail clippings to test for gunshot residue. Perkins' counsel, however, had Hawkins' fingernails tested and introduced the positive results at trial via expert testimony. Therefore, defense counsel did not provide ineffective assistance in this respect because no missing evidence instruction was necessary.

Perkins also contends that counsel were ineffective for not requesting a missing evidence instruction regarding the police department's failure to preserve the clothing he was wearing at the time of his arrest. He asserts that "the front of the missing short he wore would have tested positive for gun powder residue supporting his story of the deceased possessing and firing the gun at him inside the apartment. No doubt this evidence [would] logically explain why the deceased's fingernail clippings . . . tested positive for gun powder residue by [Perkins'] expert." (D.I. 2 at 9)[5] The Superior Court rejected this claim as unsubstantiated for two reasons: (1) defense counsel had some of **Hawkins'** clothing tested for gunpowder residue and the results were negative, thereby undermining Perkins' claim that Hawkins shot at him first; and (2) Perkins failed to explain how the alleged the absence of close range blood stains corroborated his claim of self-defense.

In this proceeding, Perkins does nothing more than assert an unsupported argument that finding gun shot residue on his shorts would have had provided positive evidence helpful in

---

[5]The page number referred to for docket entries is the page number generated by CM-ECF, not the page number on the original document.

substantiating his allegations of self-defense. Perkins' mere speculation about a possible positive forensics test does not, however, establish a reasonable probability that the jury's verdict would have been different but for the absence of a missing evidence instruction. Therefore, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this argument.

### 2. Failure to Object to Prosecutor Statements in Closing Argument

Perkins next contends that counsel should have objected to the following prosecutorial misconduct during the State's closing argument: improper vouching for the credibility of the police witnesses and their failure to preserve certain evidence; unfair attacks on the defense evidence; and intentional misleading of the jury about Perkins' prior firearm conviction. As demonstrated below, this contention is unavailing, because the prosecutor's actions did not amount to misconduct.

### a. Vouching and Attacking Quality of Evidence

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986)(citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). When determining whether a prosecutor's comments are improper, the comments must be viewed in the context in which they were made. *United States v. Young*, 470 U.S. 1, 11 (1985).

During Perkins' trial, defense counsel presented photographs depicting a bullet hole in the ceiling of Perkins' apartment. Testifying for the defense, Perkins' brother Kevin stated that he took the pictures and that he did not shoot the hole depicted in the photographs. However, when

cross-examined by the State, Kevin conceded that he had the opportunity to shoot the hole in the ceiling. During the State's closing argument, the prosecutor said,

> Two brothers, two younger brothers trying to help Leon Perkins in a clumsy, inartful way. Look at the photos. They're not evidence in this case of any weight of any import. They're junk or they're worse.

The prosecutor also contended that Kevin was responsible for shooting the hole in the ceiling.

In his Rule 61 motion, Perkins argued that counsel provided ineffective assistance by failing to object to those prosecutorial statements as improper comments on the significance of the photographic evidence and the credibility of Perkins' brother Kevin. The Delaware Supreme Court rejected the ineffective assistance of counsel claim because the prosecutor's statements were legitimate and reasonable inferences based on the evidence presented at trial.

It is well-settled that, during closing summation, a prosecutor may properly comment on the evidence and all legitimate inferences which logically flow therefrom. *See Hughes v. State*, 437 A.2d 559, 573 (Del. 1981). For instance, a "prosecutor is permitted – indeed expected - to comment on the evidence that was presented at trial and connect the dots for the jury by explaining what each piece of evidence means and how it all fits together to prove his or her case." *United States v. Hoffecker*, 530 F.3d 137, 194 (3d Cir. 2008).

In this case, Perkins has not provided any argument or evidence to rebut the Delaware state courts' conclusion that the prosecutor's characterization of the photographs was supported by the evidence, and the trial transcript actually reveals that the prosecutor questioned the quality of the photographs during his cross-examination of Kevin. (D.I. 15, App. to Appellant's Br. in *Perkins v. State*, No.126,2006 at A-177) Therefore, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this claim, because the prosecutor's

statement constituted a proper inference based on the evidence presented at trial.[6]

Perkins also contends that counsel erred by failing to object to the following prosecutorial statement as improper vouching about the "good faith of the police department's credibility [with respect to the department's] failure to preserve exculpatory evidence" (D.I. 2 at 28):

> What would it do to the State's case if her prints were on the [ammunition] box? Nothing. The box was out on the floor. You saw it on the floor. It doesn't prove anything. The fact that her prints were on there wouldn't prove that she brought them to the scene. That's why [the fingerprint analysis] wasn't done.

The Delaware Supreme Court rejected this ineffective assistance argument after determining that the comments did not constitute vouching because the comments were supported by the evidence presented at trial.[7]

Once again, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in rendering this decision. Improper prosecutorial vouching occurs when: (1) the prosecutor assures the jury of a witness' credibility; and (2) the assurance is based on the prosecutor's personal knowledge or on information not contained in the record. *United States v. Lawn*, 355 U.S. 339, 359 n. 15 (1958); *see also United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). Here, however, the transcript of the closing arguments reveals that defense counsel raised the issue of the police department's failure to test the fingerprints found on the

_____

[6]The court concludes that Perkins cannot establish that he was prejudiced by counsels' failure to object to the statements for one additional reason: the jury members were able to draw their own conclusions about the quality of the photographs because the photos were admitted into evidence at trial.

[7]Although the Delaware Supreme Court applied Delaware's standard for improper prosecutorial vouching, the state standard complies with the aforementioned federal standard. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999).

ammunition box against Hawkins' fingerprints, stating

> What would that do to the State's case if her [i.e., Hawkins] fingerprints, in addition to his, were found on this box? That is a piece of the puzzle they don't want you to have.

(D.I. 15, App. to Appellant's Op. Br. in *Perkins v. State*, No.126,2006, at A-283) This statement insinuated that the police purposefully decided not to compare the other fingerprints on the box with Hawkins' prints because finding Hawkins' prints would have negatively affected the State's case. The prosecutor only made the allegedly improper statement about the reason the police did not request a fingerprint analysis because he felt the need to address defense counsel's speculative statement. When looked at in this context, the court concludes the prosecutor's statement was a brief and appropriate response to defense counsel's speculative attacks on the police department's credibility, and did not constitute improper injections of personal opinion or facts not in evidence. Therefore, defense counsel did not provide ineffective assistance by failing to object to a proper prosecutorial statement.

### b. Perkins' prior firearm conviction

Perkins also contends that the prosecutor's remarks suggesting that he had a gun prior to the murder were improper because they misled the jury to believe that the gun he previously possessed was the same gun used to kill Hawkins. However, Perkins testified at trial that he had a gun prior to December 2002,[8] the time of Hawkins' murder. Therefore, this particular contention fails to satisfy either prong of *Strickland*, because the prosecutor's comment was properly based upon evidence presented at trial

---

[8](D.I. 15, App. to Appellant's Op. Br. in *Perkins v. State*, No.126,2006, at A-243)

### 3. Failure to Move to Sever Person Prohibited Charges

Next, Perkins contends that counsel was ineffective for failing to move to sever the possession of a deadly weapon by a person prohibited charges from the remainder of the indictment. This claim is unavailing. Prior to trial, defense counsel obtained a stipulation from the State that Perkins was a person prohibited, and successfully removed the underlying offense (carrying a concealed weapon) from the indictment. *See Perkins*, 2008 WL 240623, at *5. Because the underlying charge making Perkins a person prohibited was removed from the indictment, the jury was never told the nature of Perkins' prior felony conviction for carrying a concealed weapon. Relying on this procedural history, the Delaware state courts held that Perkins did not establish that he was prejudiced by defense counsel's failure to move to sever the possession of a deadly weapon by a person prohibited charges from the remainder of the indictment.

In this proceeding, Perkins again contends that counsel was ineffective for failing to move to sever the possession of a deadly weapon by a person prohibited charges from the remainder of the indictment. He alleges that he was prejudiced by counsel's failure to sever because the "trial court's self-defense instructions on the PDWBPP charges improperly permitted the jury to consider [his] prior ex-felon status as substantive evidence to first degree murder and PFDCF." (D.I. 2 at 39) The court is not persuaded. Counsels' action did not fall below an objective standard of reasonableness, because they succeeded in getting the underlying offense of carrying a concealed weapon removed from the indictment and in obtaining a stipulation regarding the PDWPP charges. In turn, counsels' failure to sever the two PDWPP charges did not prejudice Perkins' defense, because the nature of Perkins' prior felony conviction was not disclosed to the

20

jury. Accordingly, the court will deny this claim.

### 4. Failure to Request Lesser-Included Offense Instructions

Perkins also contends that counsel was ineffective for failing to properly advise him with respect to his decision about whether to ask for lesser included offense instructions for the charge of first degree murder. The Delaware state courts rejected this argument after determining that defense counsel had several discussions with Perkins regarding the lesser included offense instructions, and that Perkins was aware of the ramifications of his decision not to seek instructions on lesser included offenses. The state courts also concluded that defense counsels' decision not to request a lesser included offense instruction was both tactical and objectively reasonable.

After reviewing the record, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in rejecting the instant argument. As recognized by the Supreme Court, there may be circumstances where a defendant's failure to request an instruction on lesser included offenses can be proper trial strategy,[9] such as when the defendant is pursuing an "all or nothing" strategy because he believes that the State has not successfully proven the elements of a charged offense. *See State v. Brower*, 971 A.2d 102, 107 (Del. 2009). Moreover, "[i]n Delaware, . . . the trial judge does not consider whether there is a rational basis in the evidence to instruct the jury on a lesser-included offense unless requested to do so by a party." *Id.* at 108.

---

[9]*See Spaziano v. Florida,* 468 U.S. 447, 456 (1984)("there may well be cases in which the defendant will be confident enough that the State has not proved capital murder that he will want to take his chances with the jury"); *Hooks v. Ward*, 184 F.3d 1206, 1234 (10th Cir. 1999)("[I]n the context of instructions on lesser included offenses, we see particular strategy reasons why a defendant might not want to present to jury with a compromise opportunity."); *United States v. Chandler*, 996 F.2d 1073, 1099 (11th Cir. 1993).

Here, the transcript of Perkins' colloquy with the trial court demonstrates that defense counsel fully informed Perkins about his options with respect to lesser included offense instructions, and that Perkins made a conscious decision to forego any lesser-included offense instructions with respect to the first degree murder charge. In fact, defense counsel discussed lesser included instructions with Perkins on at least three occasions, and warned him of the danger of an "all or nothing" strategy. *Perkins*, 2008 WL 2406231, at *6. And, considering that the overall defense strategy was to present the theories of self-defense and accidental homicide, defense counsel felt a "strict interpretation of the requested jury instruction devoid of a lesser included offense should lead the jury to find movant did not have the requisite intent for Murder in the First Degree or the related charges and felt that absent such intent, the jury must legally acquit the defendant." *Id.* Perkins and counsel "felt that this approach was risky but worth the effort," and that instructing the jury on lesser-included offenses would have undermined that strategy. *Id.*

In short, counsel decided to forego lesser included offense instructions only after careful consideration of the facts and the law, and after discussing the choice with their client. Thus, when viewed in context with the overall defense theory, the court concludes that Perkins has not rebutted the strong presumption that counsels' conduct fell within the wide range of objectively reasonable assistance. *See Strickland*, 466 U.S. at 689.

### 5. Failure to Object to Inadequate Jury Instructions

The trial court gave the following standard unanimity instruction at the end of Perkins' trial:

> Please understand that you are the sole judges of the facts of the case and the law does not permit me to comment on the evidence and nothing I say or have said in these instructions or nothing I've said during trial is meant to suggest the Court has any opinion on the weight of the evidence or has intended to favor either side. It is your duty to

22

determine the facts and to determine them only from the evidence in this case. You are to apply the law as defined in these instructions to the facts, and in this way decide the case.

You have a duty to consult with one another and to deliberate with an open mind and with a view to reaching a verdict. And as you know, all 12 jurors must unanimously agree to the jury's verdict. Each of you should decide the case for yourself but only after impartially considering the evidence with your fellow jurors. And in the course of deliberations, do not hesitate to reexamine your first impression or to change your opinion if you are convinced by the discussions. However, you should not surrender your own opinion as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict. You are officers of the court and you must act impartially, that is, without favoring either side, but based on the evidence and with a desire to declare a proper verdict.

(D.I. 15, App. to Appellant's Op. Br. in *Perkins v. State*, No.126,2006, at A295-296). In his Rule 61 proceeding, Perkins alleged that counsel provided ineffective assistance by failing to request a separate unanimity instruction that the jury must agree unanimously upon the criminal act or acts. Perkins based this claim on the Delaware Supreme Court case *Probst v. State*, 547 A.2d 114 (Del. 1998). In *Probst*, the State prosecuted under multiple theories for a single charge of assault, namely, that Probst was guilty by virtue of her own conduct (shooting the victim herself) or, in the alternative, as an accomplice to her brother's conduct. The *Probst* court held that a separate unanimity instruction was required because, although there was only one charge of assault, there was evidence of two separate shots being fired by two different people. However, in Perkins' case, the Delaware state courts concluded that the *Probst* rule was inapplicable, because there were no simultaneous actions by two individuals; rather, Hawkins was shot by a single gun and a single individual. Given these circumstances, the Delaware courts denied Perkins' ineffective assistance of counsel claim.

Now, in this proceeding, Perkins again asserts that counsel was ineffective and violated the rule announced in *Probst* by failing failure to request separate unanimity instructions for the

possession of a deadly weapon or ammunition by a person prohibited charges and the first degree murder charge. The court is not persuaded. Perkins has not only failed to demonstrate that the standard jury unanimity instruction was inadequate, but also that a *Probst* unanimity instruction was even available in his circumstances. As explained by the Superior Court, unlike the situation in *Probst*, "the fatal shooting of Hawkins involved a single individual with a single gun and not simultaneous actions by two individual each firing separate weapons at the same victim." *Perkins*, 2008 WL 2406231, at *6. "Although three different theories of liability were asserted,"[10] *Id.*, the two theories asserted by the defense were premised on the proposition that Perkins accidentally shot Hawkins, not that Hawkins was killed by a bullet shot by someone other than Perkins. Accordingly, the court will deny the instant claim because Perkins has failed to satisfy either prong of *Strickland*.

### B. Claim Two: *Brady* Violation

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In claim two, Perkins alleges that his due process rights were violated because the State destroyed and/or suppressed the following exculpatory material in violation of *Brady*: (1) the bullet lodged in his apartment ceiling; (2) the gun that was thrown into the river; (3) a comparison between Hawkins' fingerprints and other prints found in his apartment; (4) the clothes he was wearing at the time of his arrest; and (5) gunpowder residue on Hawkins' hand and fingernails. Significantly, however, Perkins' filings in this proceeding

---

[10]The third theory was the State's theory of intentional murder.

clearly demonstrate that his true contention is that the State failed to gather and secure the

aforementioned evidence, not that the State suppressed and/or destroyed such evidence.

Although *Brady* prohibits the government from suppressing and/or destroying evidence favorable

to the accused that is in its actual or constructive possession, it does not require that the

government gather evidence or conduct an investigation on behalf of the defense, especially

when the defense knows about the evidence, has equal access to the evidence, and makes no

request for the evidence. *See, e.g., United States v. Perdomo,* 929 F.2d 967, 973 (3d Cir.

1991)("Evidence is not considered to be suppressed if the defendant either knew or should have

known of the essential facts permitting him to take advantage of any exculpatory evidence.");

*United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002); *United States v. White*, 970 F.2d

328, 337 (7th Cir. 1992)("Evidence cannot be regarded as suppressed by the government when the

defendant has access to the evidence before trial by the exercise of reasonable diligence."). The

record reveals that Perkins was aware of all the alleged *Brady* evidence he describes in this

claim. Thus, as an initial matter, the court questions whether claim two asserts even a prima

facie *Brady* violation.

Nevertheless, the court will deny claim two as procedurally barred from habeas review.

Although Perkins raised his *Brady* claim to the Delaware Supreme Court on post-conviction

appeal, the Delaware Supreme Court held that the claim was procedurally defaulted under

Delaware Superior Court Rule 61(i)(3) because he did not raise the issue on direct appeal. By

applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain

statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law

grounds. Superior Court Criminal Rule 61 constitutes an independent and adequate state

25

procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of the aforementioned claim absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

It is well-settled that an attorney's failure to properly preserve a claim for review in state court can constitute cause for a procedural default if the assistance was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). As previously discussed, the court has concluded that Perkins' ineffective assistance of counsel claims regarding the aforementioned missing, destroyed, or suppressed evidence lack merit. Therefore, to the extent Perkins attempts to blame his default of the *Brady* claim on counsel's failure to raise the *Brady* issue on direct appeal, it is unavailing.

Although not necessary, the court also finds that Perkins has failed to establish prejudice, because he has not demonstrated that the evidence at issue was exculpatory. Significantly, as explained by defense counsel, further testing and/or searching could have actually inculpated Perkins, which, in turn, would have eliminated the possibility of his self-defense/accidental homicide defense at trial.

And finally, the miscarriage of justice exception to the procedural default doctrine is inapplicable, because Perkins has not provided any new reliable evidence of his actual innocence. Accordingly, the court will deny claim two as procedurally barred.

## IV. MOTION TO STAY

During the pendency of this proceeding, Perkins filed a motion to stay the case for an

extra sixty days to provide him with an opportunity to retain counsel. (D.I. 25) The court will deny the motion, however, because Perkins is not eligible for a stay; his petition does not contain any unexhausted claims and AEDPA's one-year limitations period is not an issue in this case. *See Rhines v. Weber*, 544 U.S. 269 (2005); *Pliler v. Ford*, 542 U.S. 225 (2004).

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Perkins' petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Perkins' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.